**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JENNIFER McLIN, as Administrator of the Estate of WILLIAM HOPE, Jr., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 10 cv 5076 |
| CITY OF CHICAGO, a municipal corporation, and OFC. MICHAEL St.CLAIR and OFC. ARMANDO UGARTE, | ) ) ) ) | Judge Matthew Kennelly |
| Defendants. | ) ) | |

## DEFENDANTS' POST-TRIAL MOTION

Defendant City of Chicago, by its attorney, Stephen Patton, Corporation Counsel, and Defendant Officers Michael St. Clair and Armando Ugarte ("Defendant Officers"), through their attorneys Liza M. Franklin, Megan K. McGrath and Colin White (collectively, "Defendants"), respectfully move this Honorable Court, pursuant to Fed. R. Civ. Pro. 50(b), for Judgment as a Matter of Law.  Alternatively, Defendants move for a new trial, pursuant to Fed. R. Civ. Pro. 59 and in support state:

## INTRODUCTION

On November 2, 2012, the jury returned a verdict in favor of Plaintiff on all of her claims: wrongful seizure of Decedent Hope under both federal and state law against all Defendants, state law battery against all Defendants, and Section 1983 excessive force against Defendant Officer St. Clair.  This verdict cannot stand.

Defendants renew their motion for judgment as a matter of law as to Count One, alleging wrongful seizure under Section 1983, and its companion claim in Count Three,

unlawful detention pursuant to Illinois law.  The evidence presented in the case proved that the Officers had reasonable suspicion to believe Decedent Hope either committed or was planning to commit a crime.  Thus, their brief detention of him was lawful, and Defendants are entitled to judgment in their favor on Count I and III.

Alternatively, the verdict as to all claims cannot stand because Defendants were unduly prejudiced by the Court's exclusion of evidence that Decedent Hope possessed a gun and was on probation for a recent felony conviction at the time of the incident.  This crucial evidence proved that Decedent had a motive to behave in the manner the Defendant Officers described.  Although the Court initially ruled *in limine* that this evidence was overly prejudicial, the gun and Decedent's status should have been revealed when evidence was presented contradicting both the officers and another witness' accounts.  Defendants should have also been allowed to controvert Plaintiff's portrayal of Decedent as a law-abiding citizen at the time of the incident.  As a felon in possession of a weapon, Decedent was not merely a guy minding his own business in the parking lot. He was committing a crime, and was highly motivated to try to flee from the officers. Regardless of whether or not the Defendant Officers knew this information at the time, these facts would have helped the jury better understand the events of that day. Defendants therefore move for a new trial.

Defendants should receive a new trial because they were unduly prejudiced by the Court's acceptance of Plaintiff's theory of recovery which linked all of the distinct events of July 8, 2010, together.  The instructions submitted to the jury allowed them to consider Decedent Hope's death as "a foreseeable injury" caused by the Defendant Officers' unlawful detention of Hope.  Defendants believe this instruction was given in error, and

likely contributed the jury's decision. Defendants therefore move for judgment in their favor, or alternatively, a new trial.

## STANDARD OF REVIEW

Where a court does not grant a party's motion for judgment as a matter of law made under Rule 50(a), the moving party "may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for new trial under Rule 59." Fed.R.Civ.P. 50(b). The court may direct entry of judgment as a matter of law only if there was not a legally sufficient evidentiary basis for the jury's verdict. *Thomas v. Cook Co. Sherriff's Dep't*, 604 F.3d 293, 301 (7th Cir.) cert. denied – U.S. – , 131 S. Ct. 642 (2010). When a jury has reached a verdict despite not being presented with a legally sufficient amount of evidence from which it could reasonably reach that verdict, the court must vacate it. *Massey v. Blue Cross-Blue Shield of Illinois, Inc.*, 226 F.3d 922, 924-25 (7th Cir. 2000), *citing Futrell v. J.I. Case*, 38 F.3d 342, 346 (7th Cir. 1994). Although the standard is generous in favor of the non-moving party, there must be more than a "mere scintilla" of evidence to support the verdict returned in that party's favor, and any inferences drawn from the evidence must be taken in a light most favorable to the party against whom judgment was granted. *Id.*

For similar reasons, Federal Rule of Civil Procedure 59(a)(1)(A) provides that after a jury trial, a district court may grant a motion for new trial on all or some of the issues, to any party, for any reason for which a new trial has previously been granted in federal court. A court should grant a new trial where there was judicial error in the admission or exclusion of evidence, jury instructions, or party misconduct. *See* 6A MOORE'S FEDERAL PRACTICE. ¶ 59.08[1] (2d ed. 1995). A new trial should be

granted when "the verdict is against the weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party." *Briggs v. Marshall*, 93 F.3d 355, 360 (7th Cir. 1995), *citing Winger v. Winger*, 82 F.3d 140, 143 (7th Cir. 1996).

## I. DEFENDANTS ARE ENTTILED TO JUDGMENT IN THEIR FAVOR ON THE UNLAWFUL DETENTION CLAIM

The verdict that Officers Ugarte and St. Clair unlawfully detained Decedent Hope is not supported by the evidence in this case. Alternatively, the Officers are entitled to qualified immunity on this claim. The evidence did not establish that Decedent Hope's constitutional rights were violated by the Defendant Officers' initial investigatory stop, but instead plainly demonstrates that the Officers had reasonable suspicion to believe Decedent had committed or was about to commit a crime.

### A. Defendant Officers Ugarte and St. Clair Had Reasonable Suspicion To Conduct an Investigatory Detention of Decedent.

While the Fourth Amendment protects against unreasonable searches and seizures, it is well-established that law enforcement officials are permitted to make investigatory stops, referred to as "*Terry* stops," when the officer has a reasonable, articulable suspicion that the person stopped has committed or is about to commit a crime. *U.S. v. Askew*, 403 F.3d 496, 507 (7th Cir. 2005), *citing Terry v. Ohio*, 392 U.S. 1, 26 (1968); *U.S. v. Scheets*, 188 F.3d 829, 837 (7th Cir. 1999); *see also, Jewett v. Anders*, 521 F.3d 818, 823 (7th Cir. 2008). The line between a lawful *Terry* stop and an unlawful arrest is not always clear, and the court reviews the totality of the circumstances facing the officer at the time of the stop to make its finding. *Askew*, 403 F.3d at 507; *see also,*

*Jewett*, 521 F.3d at 823-24 ("reasonable suspicion is viewed in light of the totality of the circumstances known to the officer").

In the instant case, the evidence presented establishes that, under the totality of the circumstances known to the Defendant Officers, they had reasonable suspicion to conduct an investigatory stop in the Popeye's parking lot. Hope was parked far from the business entrance to the restaurant, with his car situated in such a manner to allow him to observe the back doors of Popeye's, close to where employees enter and exit, but a distance from the business entrance on 75th Street. Exhibit A (Testimony of Officer Ugarte) at 60:1, 5, 15; 61:5-7; 113:5-25-4:1-3; 114:22-25; 137:18-21; 141:18-25, 142:1-4; Exhibit B (Testimony of Officer St. Clair) at 188:4-19; 252:6-13, 19-25, 253:25; Exhibit C (Testimony of Haji Bryant) at 310:4-8; 319:10-14.   Witness Haji Bryant testified, just as the Defendant Officers did, that she noticed Decedent because he was in that spot. Ex. C at 310:4-8.  At no time did the Officers, or any other witness, see Hope conduct any business at Popeye's; rather, he was sitting in vehicle making no effort to make a purchase at the restaurant.[1]  Ex. A (Ugarte) at 60:5, 15; 61:5-7; 71:1-15; 113:5-17; 124:3-6; 141:18-25, 142:1-4; Ex. B (St. Clair) at 252:6-13, 19-25, 253:25.

After making these observations, the Officers investigated further, and only found additional circumstances to heighten their suspicions.  First, the engine running, but the window was rolled down on a hot summer day, indicating that the engine was not running to utilize air conditioning.  Ex. A (Ugarte) at 71:21-22; 72:21-22; 73:1; 77:5-9; 114:22-25; 143:6-13; Ex. B (St. Clair) at 209:12. There was no evidence of any purchase at the restaurant, or that Hope was an employee waiting for his shift to start. Ex A

---

[1] Witness Johnnie McGhee told investigators that he saw Decedent Hope buying chicken at Popeyes, and that Hope was eating what he purchased when the encounter with the officers began.  McGhee Transcript at 380:6-17.  At trial, however, he backed away from this assertion. Id. at 379:2-7.

(Ugarte) at 71:11-15; 124:3-10; 141:18-25, 142:1-4; Ex. B (St. Clair) at 259:18-260:1.

Most telling, both Officers observed a bundle of cash in the console of the car: a hundred

dollar bill wrapped around several other bills of unknown denominations.  Ex A (Ugarte)

at 77:5-12, 17-25; 78:8-9; 83:18-23; 114:22-25-115:1-8; 124:20-25; 134:2; Ex. B (St.

Clair) at 207:22-24; 225:10-11, 14-18. The Officers testified that, in their experience,

they have seen currency in this type of format when dealing with narcotics-related

activities.  Ex. A (Ugarte) at 78:3; 83:18-23; 115:1-13; 124:20-25; 125:1-6; 134:2; Ex. B

(St. Clair) at 225:10-11, 14-18. All of these circumstances make plain that the Officers

had reasonable suspicion not only to instigate a conversation with Hope, but to continue

it at the side of his car.

### B.    Officers Ugarte and St. Clair are Entitled to Qualified Immunity on Count I.

Under the doctrine of qualified immunity, public officials performing

discretionary functions are generally shielded from liability for civil damages when their

conduct does not violate clearly established constitutional or statutory rights of which a

reasonable person would have known.  *Pearson, et al., v. Callahan,* 129 S. Ct. 808, 815

(2009), *citing Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity

balances the important interests of holding public officials accountable when they

exercise power irresponsibly against protecting public employees from "harassment,

distraction and liability when they perform their duties reasonably." *Pearson*, 129 at 815,

*citing Groh v. Ramirez*, 540 U.S. 551, 567 (2004).

Although qualified immunity is a defense to a Section 1983 suit, plaintiff bears

the burden of establishing the elements of the two part test. *Spiegel v. Cortese*, 196 F.3d

717, 723 (7th Cir. 1999).  To overcome qualified immunity, a plaintiff must show (1) a

constitutional violation occurred and (2) the right at issue was clearly established at the time of the defendants' actions. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). However, for expediency, the court may determine qualified immunity based solely on a finding that the right at issue is not clearly established. *Catlin v. City of Wheaton*, 547 F.3d at 361, 365 (7th Cir. 2009). Since Plaintiff did not meet her burden, Defendants are entitled to qualified immunity.

As explained above, the evidence presented at trial establishes that reasonable officers in Officers St. Clair and Ugarte's position and with the same knowledge they possessed could have reasonably believed their actions were reasonable. The evidence was clear that the Defendant Officers, as tactical officers in the 6th District, have a duty and obligation to investigate suspicious activity that may be related to illegal activity involving guns, gangs and drugs. Ex A (Ugarte) at 30:5-9. 14-16; 113:5-25-114:1-3; 115:1-13; 124:3:10, 20-25; 125:1-6; 141:18-25, 142:1-4; Ex B (St. Clair) at 159:1-2; 188:4-19; 192:23-25; 193:1-6; 237:24-238:7; 251:25-252:5; 252:6-13, 19-25, 253:25; 260:17-23. Regardless of whether or not Decedent Hope had legitimate business in the Popeye's parking lot, everything about the manner in which Hope occupied the space in that lot would imply to an experienced officer – which the Defendants presented themselves to be – that he must at the very least conduct a field interview to determine what, if any, activity was being conducted. Ex A (Ugarte) at 30:5-9. 14-16; 33:9-11; 33:9-14; 60:1, 5, 15; 61:5-7; 113:5-25-114:1-3; 115:1-13; 124:3-10, 20-25; 125:1-6; 141:18-25, 142:1-4; Ex B (St. Clair) at 188:4-19; 192:23-25; 193:1-6; 251:25-252:5; 252:6-13, 19-25, 253:25; 260:17-23; 303:17-20. That the Officers' field interview quickly became a *Terry* stop and then a lawful arrest only shows the actions taken here

were reasonable, and they very kind of police action the doctrine of qualified immunity is designed to protect.

## II. DEFENDANTS ARE ENTITLED TO A NEW TRIAL BECAUSE THEY WERE UNFAIRLY PREJUDICED BY THE SUPRESSION OF CERTAIN EVIDENCE AND PARTICULAR JURY INSTRUCTIONS.

Before the start of trial, Plaintiff moved *in limine* for a number of facts to be barred from evidence because they were not known to the Defendant Officers at the time of their encounter with Decedent. The Court granted this motion in part, and the specific evidence that the jury was unable to hear substantially prejudiced Defendants. The fact that Decedent Hope possessed a gun at the time of this encounter and was on probation for a felony conviction, though unknown to the Defendant Officers at the time, should have been introduced to the jury because it provides an explanation and motive for Decedent's actions as described by the Officers and other witnesses. Furthermore, the jury should have been presented this evidence because Plaintiff's counsel repeatedly implied that Decedent was not breaking any laws at the time of this encounter when he was in fact: by being a felon in possession of a weapon.

At the close of her case in chief, Plaintiff presented a "Brief as to Seizure/Detention Damages," wherein she argued that any damages awarded pursuant to her unlawful detention claims – both state and federal – include all damages the jury might award in this case. *See* Docket ("Dkt.") at 93. Simply put, Plaintiff asked that the jury be instructed that, when assessing possible compensatory damages, they consider the entire series of events at the Popeye's parking lot on July 8, 2010, as one event. Defendants objected before the final jury instructions were tendered (memorialized at

Dkt. 100), but the Court gave a damages instructions that comported with Plaintiff's theory. Defendants renew their objection to this instruction.

### A. Decedent's Possession of a Firearm was Crucial, Relevant Evidence that Should Have Been Presented to the Jury.

To obtain a new trial based on an erroneous evidentiary ruling, the party must demonstrate that this ruling "affected his substantial rights." *Elrod v. Yerke*, 2012 WL 3716243 at *3, Aug. 24, 2012 (Darrah, J.), citing Fed.R.Evid. 103(a). The error must have a substantial influence over the jury, and the result reached as a result of the error is inconsistent with substantial justice. *Farfaras v. Citizens Bank and Trust of Chicago*, 433 F.3d 558, 564 (7th Cir. 2006).

In her motion seeking to bar evidence that Decent possessed a gun, Plaintiff relied on *Sherrod v. Berry* and *Palmquist v. Selvick*. As explained in Defendants' response, this reliance was misplaced because the evidence was not going to be offered to justify Officer St. Clair's use of deadly force. Instead, Defendants sought to introduce both the gun and Decedent's status as relevant to explain the possible motive and intent for his actions on July 8, 2010, based largely on the Seventh Circuit's decision in *Common v. City of Chicago*, 661 F.3d 940 (7th Cir. 2011). Although the Court disagreed, Defendants respectfully submit that this ruling was in error and they are thus entitled to a new trial.

Plaintiff in *Common* sought to bar defendants from offering evidence that the decedent had packets of drugs in mouth at the time he was fatally shot by the defendant officer. 661 F.3d at 943. Just as Plaintiff did here, Common argued that *Sherrod* and *Palmquist* did not allow evidence to be presented to the jury that was unknown to an officer at the time force was used. The Seventh Circuit disagreed with this strict interpretation; rather, the court explained that both prior decisions "allow a peek under

9

the blinders in certain circumstances." *Id*. at 944. The facts presented in that case presented just such a circumstance.

In *Common*, defendant officer Guy Nelson testified that he fatally shot decedent when, after failing to comply with verbal directions to show his hands, the decedent tried to disarm Officer Nelson. *Id.* at 943. The court described this as "a fight or flight response," explained by the fact (discovered later) that decent had several packets of illegal drugs hidden in his mouth. *Id.* at 945. Other witnesses, however, contradicted Nelson's version of events, saying decent had his hands in the air or that there was no struggle between Nelson and decedent. *Id*. at 945-6. Because the facts were "controverted" in that excessive force case, the Court concluded that impeachment by contradiction could be allowed. *Id.* at 946. Thus, evidence that decedent possessed drugs at the time made it more likely than not that he acted in the manner Nelson described, not the other witnesses. *Id.*

Just as decedent's actions in *Common* was "not ordinary behavior for a person encountering the police" *Id*., so too are the actions the Defendant Officers described Decedent Hope taking in the instant case. And similar to *Common*, the Defendant Officers' and another witness' accounts were "controverted" by the testimony of two witnesses: Johnnie McGhee and Patricia Polk. Ex A (Ugarte) at 84:12-17; 85:1-20; 86:6-10; 88:1-24; 90:20-23; 93:11-23; 95:12, 25-96:1-14; 97:2, 5, 18-24; 98:22; 100:2-7; 102:15-17; 106:14-16; 107:1-17; 118:3, 14-24; 119:5-23; 120:2-4, 15-24; 121:2-8, 13-25; 125:19-20; 149:2-3, 22-25; Ex B (St. Clair) at 209:10-15, 17-22; 210:2-3, 7-9; 211:3; 213:1-14, 24-214:1-21; 217:4-16; 219:9-12, 24-220:1; 222:17-22; 226:9-23; 235:10-12; 262:12-263:15; 264:9-265:6; 266:10-25; 267:9-24; 268:4-6, 14-15, 20; 269: 4-11, 21-

270:3, 5, 15, 17-19; 274:5-6, 14-16; 304:7-14, 21-23; Ex. C (Bryant) at 312:23-25; 313:1-16; 314:2-4, 19-24; Exhibit D (Testimony of Johnnie McGhee) at 382:1-7; Exhibit E (Testimony of Patricia Polk) at 12:1-2; 13:1-14.  Thus, Defendants should have been permitted to present evidence that decedent was armed in order to impeach these witnesses by contradiction.

More importantly, the evidence that Decedent Hope was a parolee in possession of a gun at the time should have been admitted to provide a motive for the actions described by the Defendant Officers and witness Haji Bryant.  Ex A (Ugarte) at 84:12-17; 85:1-20; 86:6-10; 88:1-24; 90:20-23; 93:11-23; 95:12, 25-96:1-14; 97:2, 5, 18-24; 98:22; 100:2-7; 102:15-17; 106:14-16; 107:1-17; 118:3, 14-24; 119:5-23; 120:2-4, 15-24; 121:2-8, 13-25; 125:19-20; 149:2-3, 22-25; Ex B (St. Clair) at 209:10-15, 17-22; 210:2-3, 7-9; 211:3; 213:1-14, 24-214:1-21; 217:4-16; 219:9-12, 24-220:1; 222:17-22; 226:9-23; 235:10-12; 262:12-263:15; 264:9-265:6; 266:10-25; 267:9-24; 268:4-6, 14-15, 20; 269: 4-11, 21-270:3, 5, 15, 17-19; 274:5-6, 14-16; 304:7-14, 21-23; Ex C (Bryant) at 312:23-25; 313:1-16; 314:2-4, 19-24.  The court in *Common* recognized that the "drug evidence" was properly used to show that decedent "had a motive" to act in the manner described by the officers: to avoid being caught with narcotics.  *Common*, 661 at 947.  Here, Decedent Hope being on parole and in possession of a gun is relevant because makes it more likely than not that he acted in the manner Defendants contend he did at the time of and before the shooting.  *See Edwards v. Thomas*, 31 F.Supp.2d 1069, 1073 (N.D. Ill 1999), *citing Saladino v. Winkler*, 609 F.2d 1211, 1214 (7th Cir. 1979).

Defendants sought to enter evidence that Decedent Hope was armed and on parole to show motive for Decedent Hope's actions that day, not to make any kind of character

attack. The probative value of this evidence greatly outweighs any prejudice, and Defendants should have been allowed to rebut any argument that Decedent either did not move or was just trying to leave the parking lot with evidence that he possessed a gun at that time. FRE 401, 402.

> **B.** **In Light of Plaintiff's Presentation of the Evidence, the Court Should Have Reversed Its Ruling on this Motion *in Limine***

It is well-established that ruling on motions *in limine* are preliminary, and a court may adjust previous rulings during the course of the trial. *Farfaras*, 443 F.3d at 565 (7th Cir. 2006), *citing Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984). Rulings should be subject to change when, as the case is presented, it differs from what was contained in motion. *Id.* Here, because Plaintiff attempted to imply that Decedent Hope was "innocent" of any crime at the time of the encounter in this case, the Court should have reversed its ruling on the motion and allowed Defendants to introduce evidence that this was not true.

As explained above, the evidence presented here shows exclusion of the gun was not harmless error because not allowing the jury to hear that Decedent was armed during these events allowed the jury to conclude that Decedent was just a guy minding his own business, reasonably trying to leave an encounter with the police. Similarly, the fact that Decedent was on parole would have provided the jury with an alternative to this portrayal, and thus provided a more accurate assessment. It was patently unfair for Plaintiff to be allowed to paint Decedent as an innocent, law abiding citizen on July 8, 2010 because, quite simply, he was not. Defendants are thus entitled to a new trial.

**C. The Compensatory Damages Instruction Given to the Jury was Unfairly Prejudicial to Defendants.**

Just before the case was submitted to the jury, Plaintiff submitted a trial brief in support of her position that all of the events of July 8, 2010, should be considered as one for the purpose of determining damages. Plaintiff's Trial Brief, Dkt. at 93. A compensatory damages instruction was given to the jury that supported this position. Dkt. at 94. This instruction was unduly prejudicial to Defendants, and therefore they are entitled to a new trial.

Common law tort principles permit a successful plaintiff to recover all damages that are a foreseeable consequence of that tort, however allowing the jury to consider Hope's death in their assessment of damages for his detention was wholly unreasonable. In her memorandum, Plaintiff relied on *Gauger v. Hendle*, 349 F.3d 354 (7th Cir. 2003) in support of this principle, but this interpretation reads too much into that case. *Gauger* cautions that damages should be limited to those that are a "reasonable consequence" of the specific violation. 349 F.3d at 362. Plaintiff in *Gaguer* "was not entitled to all of the damages that resulted from the train of events set in motion" by the initial tort, in that case, a false arrest. *Kiswani v. Phoenix Security Agency, Inc.*, 247 F.R.D. 554, 558 (N.D. Ill 2008), *citing Gauger*, 349 F.3d at 362-636.

Here, Hope's death should not have been considered as an event which would naturally follow the underlying stop, which the jury instructions given allowed the jury to do. First, evidence was presented that Hope's own actions – namely, moving the car – were a superseding cause of the force used in the instant case. Ex A (Ugarte) at 84:12-17; 85:1-20; 86:6-10; 88:1-24; 90:20-23; 93:11-23; 95:12, 25-96:1-14; 97:2, 5, 18-24; 98:22; 100:2-7; 102:15-17; 106:14-16; 107:1-17; 118:3, 14-24; 119:5-23; 120:2-4, 15-24;

121:2-8, 13-25; 125:19-20; Ex B (St. Clair) at 209:10-15, 17-22; 210:2-3, 7-9; 211:3; 213:1-14, 24-214:1-21; 217:4-16; 219:9-12, 24-220:1; 222:17-22; 226:9-23; 235:10-12; 262:12-263:15; 264:9-265:6; 266:10-25; 267:9-24; 268:4-6, 14-15, 20; 269: 4-11, 21-270:3, 5, 15, 17-19; 274:5-6, 14-16; 304:7-14, 21-23; Ex C (Bryant) at 312:23-25; 313:1-16; 314:2-4, 19-24. Those actions break the "train of events set in motion" by the initial stop, and thus under *Gauger* the shooting should not be considered in evaluating the damages caused by it.

Further, the very nature of the later event should preclude any damages caused by the shooting to be considered with other, earlier events. This is articulated in *Plakas v. Drinski*, 19 F.3d 1143 (7th Cir. 1994), which reminds courts that, when evaluating certain constitutional claims, especially those alleging excessive force on top of other claims, it is important to "carve up the incident into segments and judge each on its own terms." Plakas, 19 F.3d at 1150. While *Plakas* relates to the court's consideration of liability, Defendants submit that, following *Gauger* and other cases, this useful principle should have been followed here.

## CONCLUSION

The jury's verdict as to Counts I and III in this case was inconsistent with the evidence presented and thus it should be reversed. Moreover, Defendants were unduly prejudiced by the suppression of certain evidence and the damages instructions given to the jury. For the foregoing reasons, Defendants are entitled to a new trial.

Respectfully submitted,

/s/ Liza M. Franklin
LIZA M. FRANKLIN
Deputy Corporation Counsel

14

30 North LaSalle Street, Suite 900
Chicago, Illinois  60602
(312) 742-0170
Atty. No.  06216088